UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| BODYGUARD PRODUCTIONS, INC. | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | Case No.  17 CV 7667 | |
| v. | ) | | |
| | ) | Judge Robert M. Dow, Jr. | |
| Does 1 – 25, | ) | | |
| | ) | Magistrate Susan E. Cox | |
| Defendants. | ) | | |
| | ) | | |

_____

| | |
|---|---|
| DOE NUMBER 23, Ernesto Mendoza, | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BODYGUARD PRODUCTIONS, INC. | ) |
| | ) |
| Counter-Defendant. | ) |

**DEFENDANT DOE NUMBER 23'S ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS FOR DECLARATORY JUDGMENT**

**NOW COMES** Defendant Doe Number 23, Ernesto Mendoza (hereinafter "Defendant")

and answers the Complaint as follows:

1.      This is a civil action seeking damages and injunctive relief for copyright

infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.). As set

forth in greater detail below, this action involves the unauthorized acquisition, copying and

transfer by Defendants of Plaintiff's mainstream copyrighted motion picture *The Hitman's

Bodyguard* (hereinafter the "Motion Picture" or "*The Hitman's Bodyguard*").

1

**ANSWER**: Defendant admits only that this is an action seeking damages and injunctive relief, and denies the remaining allegations of paragraph 1.

2. *The Hitman's Bodyguard* is an action movie directed by Patrick Hughes, and stars Ryan Reynolds, Samuel L. Jackson and Gary Oldman, among others. The Motion Picture has significant value and has been created and produced at considerable expense.

**ANSWER**: Defendant lacks personal knowledge of the information described in paragraph 2 and therefore denies same.

3. This Court has jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (copyright).

**ANSWER**: Defendant admits that the court has jurisdiction.

4. The acquisition, copying and transfer of the Motion Picture is accomplished using a network called a "BitTorrent protocol" or "torrent," which is different than the standard Peer-to-Peer ("P2P") protocol. The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network. The initial file-provider intentionally elects to share a file with a torrent network. This initial file is called a seed. Other users ("peers") and the network, through a series of steps, connect to the seed file to download a movie. As additional peers request the same file, each additional user becomes a part of the network for which the file can be downloaded. Each new file downloader receives a different piece of the data from each user who has already downloaded the file that together comprises the whole. This piecemeal system with multiple pieces of data coming from peer members is usually referred to as a "swarm." The effect of this technology makes every downloader also an uploader of the illegally transferred file(s). This means that every "node" or

peer user who has a copy of the infringing copyrighted material on a torrent network intentionally also becomes a source of download for that infringing file.

**ANSWER**: Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 4, and therefore denies same. Paragraph 4 contains multiple legal conclusions that are denied on that basis also.

5. This distributed nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file. Essentially, because of the nature of the swam downloads as described above, every infringer is stealing copyrighted material from many Internet Service Providers (ISPs") in numerous jurisdictions.

**ANSWER:** Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 5, and therefore denies same. Paragraph 4 contains multiple legal conclusions that are denied on that basis also.

6. On information and belief, personal jurisdiction in this District is proper because Defendant, without consent or permission of Plaintiff as exclusive rights owner, within Illinois and within this District, reproduced, distributed and offered to distribute among other Defendants over the Internet the copyrighted motion Picture for which Plaintiff has exclusive rights. Plaintiff has used geolocation technology to trace the Internet Protocol ("IP") address of each Defendant to a point of origin within this District. On information and belief, Defendant

has an IP address based in this District and resides in or committed copyright infringement in this District.

      **ANSWER**:    Denied.

7.    In the alternative, this Court has personal jurisdiction over non-resident Defendants, if any, under the Illinois long-arm statute, 735 ILCS 5/2-209(a)(2) because they downloaded copyrighted content from or uploaded it to Illinois residents located in this District, thus committing a tortious act within the meaning of the Statute.

      **ANSWER:**    Denied.

8.    Venue in this District is proper under 28 U.S.C. §1391(b) and/or 28 U.S.C. § 1400(a). On information and belief, Defendants reside in this District, may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District.

      **ANSWER**:    Defendant admits that he resides in the district; all other allegations are denied.

9.    Plaintiff is a motion picture developer and producer. Plaintiff brings this action to stop Defendant from copying and distributing to others over the Internet unauthorized copies of Plaintiff's copyrighted Motion Picture. Defendant's infringements allows him and others unlawfully to obtain and distribute for free unauthorized copyrighted works that Plaintiff spends considerable sums to create, acquire and/or distribute. Each time Defendant unlawfully distributes a free copy of Plaintiff's copyrighted Motion Picture to others over the Internet, each person who copies the Motion Picture then distributes the unlawful copy to others without any significant degradation in sound and picture quality. Thus, Defendant's distribution

of even one unlawful copy of a motion picture can result in the nearly instantaneous worldwide distribution of that single copy to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights.

**ANSWER**:      Denied.

10.      Plaintiff is the owner of the copyright and/or the pertinent exclusive rights under copyright in the United States in the Motion Picture that has been unlawfully distributed over the Internet by Defendant.

**ANSWER**:      Denied.

11.      The true names of Defendants are unknown to Plaintiff at this time. Each Defendant is known to Plaintiff only by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider and the date and the time at which the infringing activity of each Defendant was observed. Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true name and will permit Plaintiff to amend this Complaint to state the same. Plaintiff further believes that additional information obtained will lead to the identification of additional infringing parties, as monitoring of online infringement of Plaintiff's motion picture is ongoing.

**ANSWER**:      Denied. Further answering, Defendant states that Plaintiff has been in possession of each and every Defendant's true name and contact information since some date prior to February 13, 2018, and has not named, and indeed has no intention of naming, any individual defendant in order *to pursue an actual claim of infringement*. Indeed, the only time a Plaintiff will amend to name an individual defendant is if they believe amending will help them obtain a settlement. Plaintiff's only reason for filing these form claims is to scare defendants

into unfair and inflated "settlements" by threatening them with $675,000 jury verdicts.[1] Since some time prior to February 13, 2018, Plaintiff, having obtained the names and contact information for all 25 Does, has sent at least one if not two threatening demand letters to those individuals.[2] According to the docket dated June 19, 2018, seven of the 25 Does have been dismissed. Plaintiff has made no effort to serve summons or otherwise comply with the plain language of Fed. R. Civ. P. 4(m) and indeed, will only do so if forced to by this Honorable Court. Otherwise, Plaintiff will simply continue to seek continuance after continuance so that it may pursue its extrajudicial extortion efforts without proper oversight from the Court.

## COUNT I
## COPYRIGHT INFRINGEMENT

12.     At all relevant times, Plaintiff has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, for the copyrighted Motion Picture, including derivative works. The copyright Motion Picture is the subject of a valid Certificate of copyright Registration (Registration No. PAu 3-844-508) issued by the Register of Copyrights on July 14, 2017. (Exhibit A.)

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 12, and therefore denies same.

13.     The copyrighted Motion Picture includes a copyright notice advising the viewer that the Motion Picture is protected by the Copyright Laws.

---

[1] See Exhibit 1 attached hereto, with settlement offer redacted pursuant to Rule 408.

[2] See Exhibit 2 attached hereto. No specific settlement offer is contained therein and therefore no redaction pursuant to Rule 408 has been made.

**ANSWER**:    Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 13, and therefore denies same.

14.    Each Defendant, without the permission or consent of Plaintiff, has used, and continues to use, an online media distribution system to reproduce and distribute to the public, including by making available for distribution to others, the copyrighted Motion Picture. Plaintiff has identified Defendant by the IP address assigned to Defendant by her ISP and the date and the time at which the infringing activity of each Defendant was observed (Exhibit B). Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.D. § 101, et seq.)

**ANSWER**:    Denied.

15.    Each Defendant deliberately participated in a swarm and/or reproduced and/or distributed the same seed file of Plaintiff's copyrighted motion Picture in digital form with others. In particular, Defendants participated in a collective and interdependent manner with other Defendants via the Internet for the unlawful purpose of reproducing, exchanging and distributing copyrighted material unique to the swarm.

**ANSWER**:    Denied.

16.    By participating in the same swarm, each Defendant participated in the same transaction, occurrence or series of transactions or occurrences as the other Defendants in the swarm. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

**ANSWER**:    Denied.

17.    As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504 and to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**ANSWER**:    Denied.

18.    The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted Motion Picture made in violation of Plaintiff's copyrights.

**ANSWER**:    Denied.

**PRAYER FOR RELIEF**

1.    For entry of a permanent injunction providing that each Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture, including without limitation by using the Internet to reproduce or copy Plaintiff's Motion Picture, to distribute Plaintiff's Motion Picture, or to make Plaintiff's Motion Picture available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Each Defendant also shall destroy all copies of Plaintiff's Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and (subject to the Order of Impoundment prayer for below) shall serve up all

copies of the downloaded Motion Picture transferred onto any physical medium or device in each Defendant's possession, custody or control.

2. For judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyright pursuant to 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Complaint.

3. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial.

4. For an Order of Impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's Motion Picture which are in Defendants' possession or under their control.

5. For Judgment in favor of Plaintiff and against Defendants awarding Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses) and other costs of this action.

6. For Judgment in favor of Plaintiff against Defendants, awarding Plaintiff such further declaratory and injunctive relief as may be just and proper under the circumstances.

**ANSWER TO PARAGRAPH 1 – 6 OF PRAYER FOR RELIEF**: Defendant denies any wrongdoing, denies Plaintiff is entitled to any recovery, and further states that he should be entitled to his own attorneys' fees for defending this matter.

**AFFIRMATIVE DEFENSES**

**LICENSE AND CONSENT**

Plaintiff is likely "honeypotting" or "seeding" the Motion Picture as a means of encouraging BitTorrent users to download the allegedly copyright work. In doing so, Plaintiff provides an implied license for BitTorrent and other users, precluding it from claiming infringement.

**FRAUD/UNCLEAN HANDS**

If Plaintiff had any real interest in protecting its copyrighted materials, it would take more prophylactic actions to protect its copyright, rather than seeding, honeypotting or encouraging the dissemination of its allegedly copyrighted materials. Plaintiff's failure to do so indicates it has no real interest in protecting its copyrighted materials, and in fact prefers that its materials be misused, as threatening/pursuing litigation is infinitely more profitable than the legal sale of the copyrighted material.

**MISUSE OF COPYRIGHT**

The purpose of the Copyright Act is to protect original works, not to misuse the Court system as Plaintiff and its related entities do to extort unreasonable and unsupportable sums from innocent victims.

**FAILURE TO MITIGATE**

Plaintiff has made no attempt to mitigate any actual or perceived damages, including but not limited to sending out DMCA take-down notices and taking additional reasonable steps not yet known to limit use of its allegedly copyrighted materials in the manner alleged in its Complaint.

**IMPROPER PURPOSE**

Plaintiff states in paragraph 11 of its complaint that "additional information obtained in discovery will lead to identification of additional infringing parties, as monitoring of online infringement … is ongoing. Defendant submits that suit against one party for the purpose of determining the existence and/or identity of another party is an improper purpose for filing suit.

**BARRATRY AND MAINTENANCE**

Upon information and belief, the attorneys and "experts" who file these claims have a prohibited interest in the outcome of these matters and the filing of such claims violates common law and criminal prohibitions on barratry and maintenance in Illinois.

**COUNTERCLAIMS**

**STATEMENT OF FACTS AND NATURE OF COUNTERCLAIMS**

**The Parties**

1.      Plaintiff/Counter-Defendant Bodyguard Productions, Inc., ("This Plaintiff") is one of countless plaintiffs  ("Other Plaintiffs") filing form copyright infringement claims clogging the dockets of federal courts across the country. These copyright infringement claims, which can be divided for ease of discussion into "porn" and "non-porn" cases, are frequently referred to as "copyright trolling"[3] because the claims rely on unsubstantiated form pleadings and declarations that indiscriminately target infringers and non-infringers alike.

2.      Defendant is a non-native English speaker in his early 70s. He is currently out of the country seeking last-ditch treatment for end-stage renal failure.

3.      Defendant has never used BitTorrent, never watched *The Hitman's Bodyguard* and indeed had never heard of the movie prior to being notified of this litigation.

4.      Defendant's only connection to the alleged infringement is as the account holder for the IP address Plaintiff's subpoena to Comcast identified.

**A History of Copyright Trolling**

5.       "A copyright troll is a party (person or company) that enforces copyrights it owns [or purports to own] for purposes of making money through litigation, in a manner considered unduly aggressive and opportunistic…"[4]

---

[3] See Matthew Sag, *Copyright Trolling: an Empirical Study*, Iowa Law Review (2014) available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2404950

[4] https://en.wikipedia.org/wiki/Copyright_troll

6.      Upon information and belief, copyright trolls began filing cases in the 2009 – 2010 time frame. The names change but the game is always the same: extortion.

7.      The entities behind the filing of these claims – not the Plaintiffs, which are most of the time merely shell companies – have no need to invest in a case that could be proven at trial or in a monitoring system that reliably identifies infringement without a large ratio of false positives because they have figured out a way to trick courts across the country into rubber stamping their Rule 26(f) Motions for early discovery, the results of which provide them the only thing they need: a list of individuals to threaten and extort.

8.      Trolling as a business model works because the cost to initiate a lawsuit is extremely low in federal court ($400.00 per filing) and the cost to hire a copyright lawyer for the defendant can be very high ($300- $500+ per hour).   Retainers requested by defense counsel frequently far exceed the cost of an early settlement.

9.      The sole reason for these filings is to misuse the court's subpoena power to obtain lists of extortion targets – in many cases individuals with no liability – who will be bullied and threatened with statutory damages of up to $150,000 for a single download. Even when the extortion target has done nothing wrong, This Plaintiff and Other Plaintiffs' counsel are frequently able to intimidate defendants into paying them money out of fear.

10.     The true purpose of the filing – a list of extortion targets – is easily obtainable because the form complaint and form declaration receive little or no scrutiny from most courts.

11.     This is particularly true in the Northern District of Illinois, which does not appear to require compliance with Fed. R. Civ. P. 4(m), thereby allowing Plaintiff's extrajudicial

extortion activities to continue long past the 90 days the Federal Rules suggest a defendant must be named and served.

### The Mechanics of Copyright Trolling

12.     These lawsuits are procedurally formulaic: identical or substantially similar complaints, identical or substantially identical ex parte motions for early discovery, identical or substantially identical declarations in support of these ex parte motions for early discovery, and identical or substantially identical demand letters within and among jurisdictions.

13.     A few days after the case is filed, This Plaintiff and Other Plaintiffs file a form motion for early discovery, including a form declaration from purported "expert" Daniel Arheidt, who claims in form fashion to have obtained certain evidence of infringement through use of "geolocation technology."

14.     This Plaintiff's attorney then sends threatening and misleading form demand letters under the auspices of Federal Rule of Evidence 408. (See Exhibits 1 and 2.)

15.     If an individual contacts This Plaintiff's attorney to discuss the matter, they are threatened with exaggerated damages and litigation costs in an effort to maximize "settlement" amounts.

16.     If This Plaintiff's attorney or his agents are not successful in threatening a Doe into settlement they usually simply dismiss that Doe without prejudice, but will rarely amend their complaint to name the defendant individually solely for the purpose of obtaining a settlement.

17.     Thus, Plaintiff/Counter-Defendant and Other Plaintiffs, have obtained hundreds of thousands, if not millions of dollars in "settlements" by threatening infringers and non-infringers identically.

18.     The trolling model relies on two practices: "sue and settle" and "cut and run." Non-porn plaintiffs like This Plaintiff prefer "sue and settle," which is the best return on investment: Pay the filing fee; file a form motion for early discovery using the declarations described below against as many Doe defendants as a given jurisdiction will allow; get names and addresses of account holders; send threatening and exaggerated demand letters; get quick settlements prior to amending to name actual defendants; dismiss the remainder of defendants without prejudice before the Court requires amendment and/or service under Rule 4(m).

19.     This Plaintiff and Other Plaintiffs using the "sue and settle" model have no intention of pursuing an actual lawsuit, and indeed, will employ the "cut and run" practice if forced to do so: engage in half-hearted litigation for the sole purpose of hoping the cost of defense will scare the defendant into settlement; and when those efforts fail, file a Rule 41 and fight tooth and nail if and/or when the prevailing party defendant seeks their fees and costs.

20.     The most important factor in the economic model is this: ***This Plaintiff and Other Plaintiffs do not have the "evidence" their form declarations and complaints suggest they have***. The "evidence" purportedly mined by these Investigators is insufficient as a matter of law to establish infringement, and that evidentiary failure is known by the real party in interest and its lawyers from the time the case is filed.

21.     If litigation in the form of an answer and/or counterclaim for a defendant risks exposing that fact, the plaintiff must cut and run – and even pay the costs and fees of the

defendant where necessary[5] – in order to preserve an extortion model that indiscriminately treats both infringers and non-infringers alike.

### The German Investigator Link

22.    The scheme requires that Plaintiff present evidence of alleged infringement as though it has been as procured by a purported "expert" through use of purported proprietary "geolocation technology." This "geolocation technology" – referred to in this case as "MaverikMonitor" is likely owned an operated by the real party in interest hereto, Guardaley, a British corporation.

23.    Trolling is only economically viable if the processes are outsourced to third parties: The "geolocation technology" is operated by an unregulated entity in Germany, referred to in porn cases as IPP, and currently referred to in non-troll matters as "Maverickeye," although the names of both the "investigators" and the entity "employing" the "investigator" frequently change. Pleadings, motions and supporting documents are prepared offshore, not by counsel of record or the shell corporation "Plaintiff." These offshore entities that are, upon

---

[5] See, e.g. *Elf-Man LLC v. Lamberson*, Case No. 13 cv 395 (E.D. Wa.) (ECF No. 110 Jan. 9, 2015); *Cobbler Nevada, LLC v. Gonzales*, Case No. 3:15-cv-00866-SB (D. Or.) (ECF No. 51, Dec. 2, 2016) findings and recommendation awarding fees and ordering dismissal with prejudice in response to a motion for voluntary dismissal under Rule 41); *ME2 Productions v. Sheldon*, Case No. 17 cv 00158 (D. Or.) (ECF No. 42, Oct. 18, 2017) (costs and fees recommendation upheld); *Clear Skies Nevada, LLC v. Hancock*, Case No. 15 cv 6708 (N.D. Ill. (Defendant awarded $65,268.31 in costs and fees and requested dismissal without prejudice converted to dismissal with prejudice) (ECF No. 101, Aug. 23 2017 and ECF No. 133, Feb. 21, 2018); *Criminal Productions Inc. v. Cordoba*, Case No. 2:16-cv-02704-JCM-PAL (D. Nev.) (Motion for Attorneys' Fees and Costs (ECF No. 51, Aug. 2, 2017) in the amount of $48,628.50 (ECF No. 60, April 17, 2018); *Fathers & Daughters Nevada, LLC v. Zhang*, Case No. 3:16-cv-1443-SI (D. Or.) (ECF No. 68, June 18, 2018) (awarding $47,407.70 in costs and fees to prevailing party defendant).

information and belief, owned by the same individual or group of individuals, most likely Guardaley, a British Corporation.

24.     Early troll cases were filed by entities claiming to use the infringement monitoring services of Guardaley, Limited "a company incorporated in England and Wales… and a leading provider of online anti-piracy services for the motion picture industry."

25.     These cases also frequently included a declaration from Benjamin Perino, claiming a relationship to an entity referred to as U.S. Copyright Group.

26.     Plaintiffs such as G2 Productions, LLC, Atche, and West Bay One, Inc., relied on the declarations of Guardaley representative Patrick Achache to support motions for early discovery to obtain the identities of hundreds, if not thousands, of "Does" –the extortion targets for whom Plaintiff sought contact information through use of the court's subpoena powers.

27.     In his form declarations in support of these motions, Achache suggested he was the "Director of Data Services," for Guardaley, and had "approximately ten (10) years of experience related to the protocols, technical architecture and operation of the Internet."

28.     In March of 2012, after Guardaley was dismissed from the *Shirokov v. U.S. Copyright Group, et al.* matter, references to "U.S. Copyright Group" and "Guardaley" no longer appeared in new filings.

29.     The "Motion for Leave to Take Discovery Prior to Rule 26(f) Conference" in the Northern District of Illinois's first troll case, *RG Investments Group, Inc., v. Does 1-117* relied on the declaration of Tobias Fieser, an individual employed by IPP, Limited, a company "organized

and existing under the laws of Germany, in its litigation support department." (Dkt. No. 12-1 ¶ 4.)

30.    Fieser claimed that "Plaintiff retained IPP to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' copyrighted works. (Dkt. No. 12-1 ¶ 12.)

31.    In the Northern District of Illinois non-porn plaintiffs like This Plaintiff and Other Plaintiffs have relied on declarations purportedly signed by declarants William Gorfein, Darren M. Griffin, Daniel Macek and most recently Daniel Arheidt, although there could be others.

32.    The more recent declarations of Arheidt, Fieser, Gorfein, and Macek all appear to be amalgamations of early declarations from Achache, Fieser and Perino, suggesting that the "litigation support department" for all of the copyright troll plaintiffs is one in the same.

33.    Upon information and belief, This Plaintiff and Other Plaintiffs have not made a single alleged "expert" witness available for deposition.

34.    Upon information and belief, only one of the tens of thousands of cases employing this model has gone to trial.

35.    Indeed, the *raison d'etre* for these complaints is not protection of a copyright or pursuit of an infringer. That would require the Plaintiff to actually litigate their claims and produce evidence allegedly in the possession of the German investigators.

## JURISDICTIONAL STATEMENT

36.    This Honorable Court has personal jurisdiction over this Counter-Defendant for purposes of these Counterclaims Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

37.     Venue is proper in this Honorable Court under 28 U.S.C. § 1391(b). Counter-Plaintiff resides in the Northern District of Illinois, and all acts and omissions of Counter-Defendant occurred in the Northern District of Illinois.

38.     The Claimant incorporates by reference, each and every allegation contained in each of the paragraphs above of this counterclaim as if fully set forth herein.

**COUNT I**
**DECLARATION OF NON-INFRINGEMENT**

39.     Defendant has not infringed any of Defendant's rights under 17 U.S.C. § 106.

40.     Defendant has not infringed Defendant's rights under 17 U.S.C. § 501.

41.     There is an actual controversy now existing between Plaintiff and Defendant.

42.     A controversy remains and requires affirmative action by this Court to determine the respective rights of the parties.

43.     Absent a declaration of non-infringement in his favor, Defendant remains prey for This Plaintiff and Other Plaintiffs utilizing the same extortion scheme described herein.

44.     Dismissal from this lawsuit without prejudice is inadequate to vindicate Defendant's rights.

45.     Defendant is entitled to a declaratory judgment of non-infringement, to his costs and attorneys' fees as a prevailing party pursuant to 17 U.S.C. § 505, and to such other and further relief as may be appropriate, including sanctions against Plaintiff and its attorneys.

**COUNT II**
**DECLARATION OF RIGHTS**

46.     Fed. R. Civ. P. 4(m), Time Limit for Service, states as follows: If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—**must dismiss the action without prejudice** against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

47.     This Plaintiff was provided this Defendant's name and contact information sometime prior to February 18, 2018, the date of Plaintiff's first correspondence to Defendant. (See Exhibit 1.)

48.     This Plaintiff has made no effort or attempt to amend its Complaint or serve proper summons upon this Defendant.

49.     This Plaintiff has made no effort or attempt to amend its Complaint or serve proper summons upon any Defendant in this matter.

50.     This Plaintiff and Other Plaintiffs make no effort to name or serve defendants. Rather, they seek informal extensions to continue "settlement discussions" with unnamed Defendants and never notify the Court that they are not undertaking service attempts.

51.     This Plaintiff and Other Plaintiffs have no interest in naming and serving any defendant because they have no interest in litigating their claims.[6]

---

[6] Defendant and his counsel acknowledge that there is the rare instance when This Plaintiff or Other Plaintiff will name and serve a Defendant, but it is exceedingly rare and does not result in litigation of the merits; rather, it is Plaintiff's effort to "up the ante" and increase the probability of a settlement. This Plaintiff has over 50 claims currently pending, many of them with Rule 4 deadlines past or approaching.

52.     This Plaintiff and Other Plaintiffs are in violation of Fed. R. Civ. P. 4(m) every time they have not named and served a targeted defendant within 90 days of being provided a Doe Defendant's name and contact information.

53.     This Plaintiff and Other Plaintiffs are in violation of Fed. R. Civ. P. 4(m) every time they fail to voluntarily dismiss a targeted defendant within 90 days of being provided a Doe Defendant's name and contact information if they do not intend to name and serve that Doe Defendant.

54.     This Plaintiff and Other Plaintiffs, through their counsel, should be obligated, as are other parties in litigation pending before this Court, to comply with the plain language of Fed. R. Civ. P. 4(m).

55.     Counter-Plaintiff, an interested party hereto, seeks a declaration that shall have the force and effect of a judgment requiring This Plaintiff to comply with the requirements of Fed. R. Civ. P. 4(m), to wit, Plaintiff must name and serve all Doe Defendants with proper summons and complaint within 90 days of receipt of any Doe Defendant's name and contact information.

56.     Defendant is entitled to a declaratory judgment of the rights described hereto, to his costs and attorneys' fees as a prevailing party pursuant to 17 U.S.C. § 505, and to such other and further relief as may be appropriate, including sanctions against Plaintiff and its attorneys.

**JURY DEMAND FOR COUNTERCLAIMS**

Respectfully submitted,


_____Lisa L. Clay_____

Lisa L. Clay, Attorney at Law
345 North Canal Street, Suite C202
Chicago, Illinois 60606
Phone: 312.753.5302
lclayaal@gmail.com
ARDC # 6277257



**CERTIFICATE OF SERVICE**

Lisa L. Clay, an attorney, certifies that on June 20, 2018 she filed a copy of the foregoing **DEFENDANT DOE NUMBER 23'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS FOR DECLARATORY JUDGMENT** via the ECF filing system, which will provide notice to all counsel of record.


_____Lisa L. Clay_____