IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BODYGUARD PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | Case No. 17-cv-7667 |
| | ) | |
| DOE NO. 23, ERNESTO MENDOZA, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BODYGUARD PRODUCTIONS, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## ORDER

For the reasons stated below, Plaintiff/Counter-Defendant Bodyguard Productions, Inc.'s motion for voluntary dismissal of its claims against Defendant/Counter-Plaintiff Doe No. 23 (Ernesto Mendoza) [31] is granted. Plaintiff's claims against Doe No. 23 (Ernesto Mendoza) are dismissed with prejudice. Defendant/Counter-Plaintiff's counterclaims also are dismissed. In addition, applying the *Fogerty* factors to the particular circumstances of this litigation, the Court denies Defendant/Counter-Plaintiff's request for attorneys' fees and costs under Section 505 of the Copyright Act. Each side will bear its own fees and costs in this litigation. The motion to stay mandatory initial discovery responses under the pilot project [34] is stricken as moot. Finally, the points advanced by Defendant about the potential for abuse across the universe of peer-to-peer copyright infringement cases convince the Court that it should re-evaluate its own overall treatment of these cases and consider whether to suggest that the Rules Committee in this district look into the matter as well. Civil case terminated.

## DISCUSSION

The issue before the Court presents the rare circumstance in which a defendant opposes, at least in part, a plaintiff's motion for voluntary dismissal of a case with prejudice. This is one of dozens upon dozens of cases pending in this and other districts in which plaintiffs simultaneously sue a number of "John Doe" defendants for allegedly committing copyright violations by

downloading movies using a peer-to-peer network called "BitTorrent." Most of these cases follow the same pattern: (1) Plaintiff sues the "Doe" entities, known only by their IP addresses; (2) Plaintiff requests and receives permission to serve a subpoena on the internet service provider to obtain the name of the subscriber linked to that IP address; (3) Plaintiff contacts the identified individuals proposing a settlement of the dispute; (4) Plaintiff obtains some settlements and ultimately dismisses the non-settling Defendants.

That pattern was followed in this case with the exception of one Defendant. Originally identified as Doe Number 23, and now known as Ernesto Mendoza, that Defendant retained counsel and filed an answer. In the answer, Defendant indicated, among other things, that he is in his 70s and suffering from end-stage renal disease. A few weeks later, Plaintiff filed the instant motion for voluntary dismissal with each side to bear its own fees and costs [31] and shortly thereafter filed a second motion seeking to stay its mandatory initial discovery responses under the pilot project underway in this district [34].

Defendant opposes both of the motions, as he believes that the BitTorrent cases as a whole amount to "sham litigation," and feels that he should be entitled to attorneys' fees as a prevailing party under Section 505 of the Copyright Act. As defense counsel candidly acknowledges, she "spent significant time responding to this Motion to Dismiss because she sincerely wishes the Court would more thoroughly evaluate [Special Purpose Entity] plaintiff claims and provide some protection to the thousands of victims of these practices in the form of (1) more thorough evaluation of ex parte motions for discovery; (2) more stringent restrictions of extensions of Fed. R. Civ. P. 4(m); and (3) notice to defendant/victims of the availability of assistance through programs like the Hibbler Memorial Pro Se Assistance Program and Legal Assistance Foundation." [42, at 2 n.2.]. To that end, Defendant's brief contains a detailed indictment of what he characterizes as a "business model that cannot and should not be authorized by the courts." Defendant characterizes Plaintiff's litigation approach as "sue then settle" or "cut and run," and asserts that "sometimes" the rights that plaintiffs in cases like this one claim to possess have been licensed away. Defendant further contends that this "Plaintiff and other SPE Plaintiffs do not have the 'evidence' their form declarations and complaints tell the courts they have." Instead, Defendant insists that the whole point of this litigation is for plaintiffs to "intimidate defendants into paying them money out of fear," rather than any sense that the defendants have been caught illegally accessing copyrighted movies. To deter this kind of behavior, Defendant submits that courts should award attorneys fees and costs to parties, like him, who obtain dismissals with prejudice and thus are prevailing parties. Defendant points to Section 505 of the Copyright Act, which authorizes district courts to make discretionary fee awards, and Seventh Circuit decisions holding that "the prevailing party in Copyright Act litigation is presumptively entitled to an award of fees under § 505." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008) (citing *Woodhaven Homes & Realty, Inc. v. Holtz*, 396 F.3d 822, 824-25 (7th Cir. 2005); *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004)).

Plaintiff responds that the charge of "sham litigation" is baseless and that its motion for voluntary dismissal simply effectuated its practice of agreeing to early dismissals for five enumerated reasons, including when the "defendant has serious health issues." Plaintiff pushes back on some of Defendant's contentions about the "business model" behind BitTorrent litigation. For example, Plaintiff attaches to its reply brief a copy of the copyright registration for the movie

2

allegedly downloaded, which lists Plaintiff as the actual copyright owner. Plaintiff also has offered to produce for *in camera* inspection its evidence of infringement in this case.

The Court accepts the apparent conclusion of both parties that this litigation should be dismissed *with prejudice* as to the sole remaining Defendant. As Plaintiff recognizes, such a dismissal "acts as an adjudication on the merits adverse to Plaintiff," and prevents any future relitigation of the issue. This type of disposition has multiple consequences. First, it renders Count I of Defendant's counterclaim a legal nullity, as the request for declaratory relief is simply the flip-side of Plaintiff's original claim that has been finally resolved on the merits. See, *e.g.*, *Malibu Media LLC v. Doe*, Case No. 13-cv-3648, docket entry 48 (N.D. Ill. June 9, 2014) (dismissing counterclaims that "add nothing to the affirmative defenses" and "do not present an independent case or controversy that would survive dismissal of plaintiff's infringement claim").[1] Second, it at least arguably establishes Defendant's status as a "prevailing party" for purposes of his claim for attorneys' fees and costs under Section 505 of the Copyright Act. See *Bell v. Lantz*, 825 F.3d 849, 850 (7th Cir. 2016) (defendant who filed an answer and obtained voluntary dismissal after responses to interrogatories confirmed defense of non-infringement given prevailing party status); *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (defendant who prevailed after case had been pending for more than a year was prevailing party after plaintiff sought voluntary dismissal of case and "conceded that it lacked the evidence to prove its claim"). Although *Bell* proceeded to discovery and *Riviera* was pending for more than a year—and thus required more effort on the part of the defendants before the plaintiff "threw in the towel"—applying the statement in *Riviera* that "[plaintiff] sued; [defendant] won; no more is required," this Court concludes that Defendant here has the better of any argument on whether there is a prevailing party in this case.

That leaves for disposition the question of whether the Court should exercise its discretion to award fees and costs in this instance. Section 505 of the Copyright Act provides that "[i]n any civil action under this title, the court *in its discretion* may allow the recovery of full costs by or against any party other than the United States or an officer thereof. * * * Except as otherwise provided by this title, the court *may* also award a reasonable attorney's fee to the *prevailing party* as part of the costs." 17 U.S.C. § 505 (emphasis supplied). The Seventh Circuit has noted that "[s]ince *Fogarty* we have held that the prevailing party in copyright litigation is presumptively entitled to reimbursement of its attorneys' fees." *Riviera Distributors*, 517 F.3d at 928. The Ninth Circuit recently declined to adopt the same presumption on the ground that "doing so would collide with Supreme Court guidance" in *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-89 (2016), "and is not consistent with the statute." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1039 (9th Cir. 2018). But this Court remains bound by *Riviera* in the absence of any intervening circuit decision to the contrary. Still, even a presumption does not equate to an obligation.

---

[1] Given that the Court is granting Plaintiff's motion for voluntary dismissal with prejudice, the Court need not address Count II of Defendant's counterclaims, which seeks dismissal of the complaint for failure to comply with Fed. R. Civ. P. 4(m). The Court therefore expresses no opinion on Plaintiff's assertion that dismissal of that counterclaim is appropriate because "a violation of a Federal Rule of Civil Procedure does not give rise to an independent cause of action." [See 31, at 8.]

The exercise of the Court's discretion under § 505 is guided by the list of non-exclusive discretionary factors discussed in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994), which include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 608 (7th Cir. 2002) (citation omitted). Given that these factors are, in the Seventh Circuit's words, "rather miscellaneous and ill-assorted, they leave the decision on whether to grant or deny attorneys' fees to the prevailing party in a copyright case pretty much to the discretion of the district judge." *Id*.

In support of his request for fees and costs, Defendant raises a number of concerning aspects about peer-to-peer copyright infringement cases as a whole. To the extent that plaintiffs in these cases lack a legitimate basis for alleging infringement and either exaggerate or bald-face lie in their pleadings to obtain early discovery, Defendant is correct in suggesting that courts should take offense. The District of Oregon has responded to the circumstances set out in Defendant's memorandum with a standing order incorporating some of Defendant's suggestions. Perhaps this District should do the same, either through a standing order or local rules. But, as the Ninth Circuit recently noted, there is another side to the story. See *Glacier Films*, 896 F.3d at 1035-36. Some defendants actually do infringe on copyrights hiding behind BitTorrent and a nameless IP address—and when they do, plaintiffs should have legal recourse to enforce their intellectual property rights.

When it comes to specific contentions about the application to this case of the *Fogarty* factors—frivolousness, motivation, objective unreasonableness, and deterrence—Defendant's arguments lack much in the way of detail. To be sure, Defendant may well have had a lot more to work with had the Court ordered the parties to proceed with the mandatory initial disclosures under the pilot project. But doing so would have unleashed the side-show of a fee dispute in a matter that the parties agreed early on should not be litigated on the merits. Had Plaintiff come back with a weak defense of its actions, however, the Court would have allowed discovery to launch. Instead, Plaintiff responded to Defendant's industry-wide attack with a plausible defense of the circumstances leading to its motion for voluntary dismissal. Specifically, Plaintiff tendered a copy of the copyright registration listing itself as the actual owner of the copyright for the movie allegedly downloaded and has offered to produce for *in camera* inspection its evidence of infringement in this case. (The Court declines the invitation because that, too, would require the expenditure of the limited resources of the Court and the parties in a case with no future on the merits.) Furthermore, Plaintiff sought voluntary dismissal of this case within a few weeks of Defendant filing his answer, which Plaintiff maintains (without refutation) was the first time it knew of Defendant's age and medical condition. Finally, there has been no discovery in the case. Plaintiff obtained settlements with some Defendants and dismissed others, and none of the settling Defendants raised any issue concerning the frivolousness or unreasonableness of Plaintiff's claims or Plaintiff's motivation in bringing the lawsuit. In short, the first three *Fogarty* factors do not weigh in favor of a fee award.

In fact, Defendant's answer and especially his brief in opposition to the motion for voluntary dismissal contain a good deal of argumentation directed more at the industry than the specific facts of this case. As the Ninth Circuit cautioned in *Glacier Films*, in deciding whether to impose fees and costs under Section 505, it is important to focus on the behavior of this defendant,

4

not the entire industry of which it is but one member. See 896 F.3d at 1042. If the Court were to separate the attorney time spent to convince Plaintiff to dismiss the claims against this Defendant from the time spent trying to convince the Court of the need to do better policing of the entire industry of peer-to-peer copyright infringement litigation, Plaintiff's fee claim would be reduced significantly. As observed above, Defendant's brief raises troubling allegations about the potential for abuse in cases like this one and counsel has been forthright in explaining her larger purposes in filing such an extensive memorandum of law with numerous exhibits. But the case has not been persuasively made for including *this Plaintiff* among the list of egregious offenders such that compensation is necessary to provide a deterrent under the fourth *Fogarty* factor.

The only case from our district cited by the parties in which fees and costs were awarded under Section 505, *Clear Skies Nevada, LLC. v. Hancock*, No. 15-cv-6708, docket entry 130 (N.D. Ill. Jan. 30, 2018) (adopting Magistrate Judge's report and recommendation to award defendant $65,268.31 in costs and fees), involved a very different (and far more egregious) set of circumstances. There, as Plaintiff recognizes [see 42, at 7], the defendant "was forced to answer" after "repeated requests for dismissal [were] ignored" and the request for voluntary dismissal was not filed until after the defendant suggested that a motion for summary judgment was being drafted.

In short, focusing on the "totality of the circumstances" in this case (*Kirtsaeng*, 136 S. Ct. at 1985), the Court concludes that an award of fees and costs is not warranted, notwithstanding the presumption in favor of awarding them. However, the points advanced by Defendant about the potential for abuse across the universe of peer-to-peer copyright infringement cases convince the Court that it should re-evaluate its own overall treatment of these cases and consider whether to suggest that the Rules Committee in this district look into the matter as well. See *Glacier Films*, 896 F.3d at 1036 (noting the special procedural rules adopted by the District of Oregon in a standing order, which "allows copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity, directs that holders must alert potential defendants of the availability of pro bono counsel to defend against infringement claims, and limits holders to suing one alleged BitTorrent infringer at a time").

Date: February 19, 2019

_____
Robert M. Dow, Jr.
United States District Judge