David H. Madden
Mersenne Law
9600 S.W. Oak Street
Suite 500
Tigard, Oregon 97223
(503)679-1671
ecf@mersenne.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODYGUARD PRODUCTIONS, INC. )<br><br>*Plaintiff* )<br><br>v. )<br><br>DOE #23 (Ernesto MENDOZA) )<br><br>*Defendant* ) | Civil Action No.:........................1:17-cv-7667<br><br>**DECLARATION OF**<br>**DAVID H. MADDEN** |

I, David H. MADDEN, submit this Declaration setting forth facts within my knowledge and

experience that may be relevant to issues in the above-captioned action. As to the following

statements, I believe them to be true, and I make this Declaration understanding that knowing

false statements may subject me to penalty for perjury under the laws of the United States. If

called upon to testify to these matters, I could and would do so competently and in accordance

with the following:

1. I am an attorney admitted in California, Oregon and Utah. I have represented defendants in

   BitTorrent copyright litigation in all three states since about 2010.

2. Prior to gaining admission to the bar, I was employed as a software engineer. I designed,

   developed, deployed and maintained programs and systems to interact over distributed data

   networks such as the Internet. I hold several U.S. patents, including two for cryptographically-

   secure data storage protocols over untrusted networks.

3. I recently obtained the deposition of Benjamin PERINO, a computer programmer who claims

   to have developed the software that collects the information upon which most of these

*Declaration of David H. MADDEN*

1   BitTorrent lawsuits are based.  Mr. PERINO has not yet completed his review of the

2   deposition transcript, so I cannot provide a copy of the relevant portions as an exhibit to this

3   declaration.  However, based on my review of case documents provided by Ms. CLAY, I

4   believe his testimony was at significant and material variance from representations concerning

5   the same matters that have been made to this Court by employees of the same investigative

6   entity (particularly, dkt. #10, Exhibit A, Declaration of Daniel ARHEIDT), submitted in

7   support of a request for early discovery.

8   4.  I would urge the Court to inquire further and carefully, either in connection with the present

9       case, or during the standard "early discovery" sought by a plaintiff in the next BitTorrent case.

10  5.  A question I believe would be useful to investigate is the exact nature of the purported

11      evidence upon which plaintiff bases its allegations and its request for early discovery.  Based on

12      my understanding of PERINO's testimony, I believe that the information on which

13      BitTorrent plaintiffs institute their suits is not admissible because no witness has personal

14      knowledge of it; nor would it satisfy Fed. R. Evid. 703 as a reliable basis for an expert's

15      opinion; and it could not independently reach the "more than a scintilla" level to be

16      considered "substantial evidence," let alone support a "preponderance" finding on a charge of

17      infringement.  (The "scintilla" concept is especially appropriate in these cases, where the

18      purported "evidence" may not comprise even a single frame of a motion picture.)

19  6.  I do not claim to be an expert in computer networks, BitTorrent transactions, or legal

20      evidentiary principles, but I believe the systems used to collect case-initiating data for

21      BitTorrent lawsuits are flawed and unreliable because they are proprietary (not peer-reviewed);

22      not certified or tested by any accepted standards agency (or even by consistent tests performed

23      by the developers); and because they intentionally discard information that might be

24      exculpatory, since such information does not serve the business purpose of collecting and

25      selling computer IP addresses to plaintiffs who will file lawsuits based upon them.

26  7.  An analogy may help to explain the sort of "exculpatory information" I believe is discarded by

1:17-cv-7667                    Declaration of David H. MADDEN
Page 2

these systems.

8.  Suppose that a city implements a "red-light camera" system that takes photos of cars present in an intersection after the signal turns red. The system takes three photos: one of the car, one of the license plate, and one of the driver. These photos are mailed to the driver's address of record with a traffic citation.

9.  Now suppose that the city decides to automate the license-plate analysis. After the characters of the plate are analyzed, **the photos are discarded**, and a citation simply listing the plate number, date and time is mailed to the registrant.

10. In the second case, the registrant has no way to investigate or evaluate the allegation against him. Perhaps the plate analysis misread a "B" for an "8"; perhaps the car running the light was a different vehicle from another state (with a similar plate number); or perhaps someone else was driving the car at the time. But because the original source photos were deleted, the registrant cannot reasonably defend himself.

11. Furthermore, the only apparent motivation for the city to discard the photos is exactly that: to *ensure* that the registrant has no choice but to pay the citation.

12. The BitTorrent data collection apparatus discards information that may be exculpatory. Specifically, Mr. PERINO testified that the system he implemented automatically collects data from anonymous computers communicating over the Internet. The data would presumably include sound and images from a movie, but would also include non-audiovisual data indicating software versions, computer types and so forth. However, only a partial, limited summary or synopsis of that data is stored, while the actual data – including the software versions and computer types – is discarded. Further, the synopses are made through a "one-way" mathematical process called "hashing," which ensures that it is impossible to reconstruct the automatically-collected data from a stored synopsis.

13. The BitTorrent lawsuits are filed on the basis of the stored synopses, so even assuming that the system had at one time collected evidence of infringement, the plaintiff at the moment of filing

*Declaration of David H. MADDEN*

1    does not have such evidence, and is further mathematically precluded from regenerating such

2    evidence. These deficiencies are concealed from the Court through artful pleading and vague

3    representations that rely on the Court's lack of technical expertise and reluctance to commit

4    judicial resources in the beginning of a case, when it is normally proper to rely on the parties'

5    greater motivation to explore alternatives and to test allegations and defenses thoroughly.

6   14. I note that Plaintiff BODYGUARD PRODUCTIONS, INC. has offered to provide its

7    purported evidence to the Court for *in camera* inspection. It surely serves the interest of

8    conserving judicial resources to decline this offer now, in the present case; but far greater

9    returns in efficiency and protection of litigants might be realized by requiring the production

10    of such evidence for the Court's inspection *before* granting early discovery in future cases.

11   15. Granting early discovery without careful investigation – and failing to hold plaintiffs to

12    account when they name the wrong individual – guarantees that citizens within a Court's

13    jurisdiction will continue to be victimized by this type of litigation.

14  Respectfully submitted,

15

16    19 March 2019

17          Date          David H. Madden
                                    Portland, Oregon

18

19

20

21

22

23

24

25

26